UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
DIANA PEREZ,

               Plaintiff,

   -against-                    **MEMORANDUM AND ORDER**
                                      Case No. 14-CV-6246 (FB)
NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

               Defendant.
-------------------------------------------------x

**BLOCK, Senior District Judge:**

     Diana Perez seeks review of the Commissioner of Social Security's final decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties move for judgment on the pleadings. For the reasons stated below, Perez's motion is granted, the Commissioner's motion is denied, and the case is remanded for further proceedings.

**I**

     Perez was born in 1962, has a ninth-grade education, and previously worked as a home health aide and a security guard. She applied for benefits in 2012, alleging an onset date of April 1, 2010, based on pain in her right knee, high blood pressure, allergies, arthritis, and asthma. After her applications were denied, she sought a hearing before an administrative law judge ("ALJ"). The evidence developed by the ALJ was as follows.

1

A.  **Medical Evidence: Physical Conditions**

Perez first sought treatment for her knee pain at Jamaica Hospital Medical Center ("JHMC") Richmond Hill Family Medicine in March 2012. She complained of burning pain and swelling over the previous three years. An MRI revealed, among other things, a partially torn anterior cruciate ligament ("ACL"). She received a cortisone injection and physical therapy, but the pain persisted. She was eventually diagnosed with osteoarthritis in both knees; she was advised to lose weight, use a cane and continue physical therapy.

Perez also received treatment from Dr. Betsy Varghese at the Joseph P. Addabbo Family Health Center. Dr. Varghese took x-rays of Perez's right knee, which confirmed the diagnosis of arthritis, and of her hands, which showed a possible ossicle or avulsion fracture. Dr. Varghese prescribed anti-inflammatory medications and a pain reliever.

Dr. Varghese completed a Multiple Impairment Questionnaire at the Commissioner's request. She diagnosed arthritis, hypertension, mild asthma and allergies. She opined that Perez could stand or walk for a less than one hour in an eight-hour workday, and that she could sit for a total of five hours, but would need to get up and move around for 15-20 minutes every hour. She further opined that Perez could occasionally lift and carry no more than five pounds.

Dr. John Joseph performed a consultative examination for the Commissioner. He observed swelling in Perez's right knee and difficulty squatting, but felt she did not need a cane to walk. He opined that Perez was mildly limited in her ability to stand and walk, and moderately limited in her ability to squat and kneel. He further recommended that she avoid respiratory irritants.

Dr. Allan Levine, an orthopedic surgeon, testified telephonically as a medical expert at the ALJ's request. Based on his review of the records, he assessed Perez's residual functional capacity ("RFC"). He opined that Perez could lift 20 pounds occasionally and 10 pounds frequently; could occasionally navigate stairs or a ramp with a railing; and could occasionally -- but not repetitively -- crouch, stoop or bend. He further opined that she could walk for up to 20 minutes at a time and for a total up to two hours a day, stand for up to 40 minutes at a time and for a total of up to four hours a day, and sit for up to six hours a day. He recommended that Perez not crawl or kneel, and that she avoid uneven surfaces, ladders, ropes, scaffolds, vibrating machinery, unprotected heights and extreme cold. He further recommended that she continue to use a cane.

**B.  Medical Evidence: Mental Conditions**

During the course of her treatment of Perez, Dr. Varghese saw signs of depression. She recommended mental health treatment.

Perez began receiving counseling from Dr. Lisardo Augustin and Brenda Jordan, a licensed clinical social worker, on March 22, 2013, a few months after she applied for benefits. Dr. Augustin diagnosed dysthymic disorder (now renamed "persistent depressive disorder"), with a Global Assessment of Functioning ("GAF") score of 45-50, corresponding to severe symptoms. He prescribed a 100-milligram dose of Zoloft.

Perez had monthly meetings with Dr. Lisardo and weekly psychotherapy sessions with Jordan through at least November 2013. In August of that year, Jordan completed a Psychiatric/Psychological Impairment Questionnaire. She noted a history of depression dating back "several years," Administrative Record ("AR") 527, including a suicide attempt in 2005 or 2006. She observed appetite disturbance with weight change, sleep disturbance, mood disturbance, decreased energy, paranoia or suspiciousness, feelings of guilt or worthlessness, hostility and irritability, and suicidal ideations. She further reported that Perez's primary symptoms were bouts of depression, difficulty sleeping, explosive episodes, anxiety, crying spells, and mood swings. She opined that those symptoms began in 2005, and that they would require treatment "for an indefinite time." AR 527.

The questionnaire asked for opinions regarding the functional effects of Perez's mental impairment. Jordan saw at least some level of limitation in 19 of 20 categories. She saw either "mild" or "moderate" limitations in Perez's ability to

4

remember simple instructions, her ability to work with others without being distracted, her ability to ask questions or request assistance, her ability to behave appropriately in a social setting, her ability to take precautions, her ability to travel and her ability to set goals and make plans. And she opined that Perez was "markedly limited" in her ability to remember procedures and detailed instructions, her ability to carry out detailed instructions, her ability to concentrate for an extended period, her ability to sustain a routine without supervision, her ability to make simple decisions, her ability to complete a normal workweek at a reasonable pace with reasonable breaks, her ability to interact with the public and co-workers, her ability to accept instructions and criticism, and her ability to adapt to changes.[1]

In addition, Jordan opined that Perez would experiences episodes of decompensation in a work setting, causing her symptoms to worsen, and that she could not tolerate even low stress because "she becomes extremely anxious in settings that are stressful." AR 533. She opined that Perez would likely miss more than three days of work per month as a result of her condition, and that "she is not likely to acquire and sustain employment at this time." AR 534.

In response to an inquiry from Perez's attorneys, Jordan explained that the clinic did not make patients' progress notes available. Instead, she provided a

---

[1] Jordan did not opine that Perez had no limitations in the remaining category -- ability to conform to a schedule. Rather, she answered "Not ratable on available evidence." AR 530.

summary narrative consistent with her questionnaire responses. She did, however, correct Perez's mental health history, noting that she had reported *two* suicide attempts, one in 2005 and a second in 2006.

**C.  Perez's Testimony**

Perez testified regarding her daily life. She lives with her two daughters and six-year-old grandson in public housing. One of her daughters pays the rent, and she receives food stamps.

Her daily routine is to get up before her daughter goes to work. She watches television and reads books. Three times a week a social worker takes her to a senior center, where she plays bingo. She does not drive or do housework. Instead, a home aide visits her three days a week, cleans her room, and does the shopping and laundry. The aide and one of her daughters do the cooking. She needs help getting dressed. She does not help her grandson get ready for school or care for him after school.

Perez testified that she can walk about a half a block before she experiences a burning sensation in her right leg. She can stand for ten minutes and sit for 15-20 minutes before she gets the same sensation. She cannot bend or kneel, and has difficulty balancing without a cane. Mentally, she feels sad and nervous and, as a result, cries, becomes angry and non-communicative, and cannot concentrate. Medication helps her focus, but does not completely eliminate her symptoms.

### D. Vocational Evidence

Andrew Vaughn testified as a vocational expert ("VE"). He opined that an individual with the RFC described by Dr. Levine could not perform Perez's past work. However, he identified three jobs at the light exertional level, and another three at the sedentary level, that such an individual could perform. In response to questions from Perez's counsel, Vaughn acknowledged that use of a cane would preclude the light-level jobs, and that the limitations described by Dr. Varghese (sitting for up to five hours and standing or walking for up to one hour) would preclude all full-time employment.

### E. ALJ's Decision

The ALJ rendered her decision on June 16, 2014. Applying the familiar five-step sequential evaluation process,[2] she concluded at step one that Perez has not

---

[2] The Commissioner must determine "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *McIntyre v. Colvin*, 748 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The burden of proof is on the claimant in the first four steps, but shifts to the Commissioner at the fifth step. *Id.*

engaged in substantial gainful activity since April 2010, and last met the insured status requirement for DIB in December 2012.

At step two, the ALJ found that Perez had a severe combination of impairments, namely, a partially torn ACL in the right knee, arthritis in both knees, hypertension and asthma. She expressly excluded from her determination Perez's "medically determinable mental impairment of dysthymia" because it "does not cause more than minimal limitation in the claimant's work activities and [is] therefore non-severe." AR 16.[3] She reasoned that "dysthymia . . . is not depression," that "there are no treatment records to establish that the claimant has suffered any vocational limitations due to this impairment," and that "the evidence presented in connection with this complaint consists solely of a letter and functional capacity assessment from a social worker, not a psychologist . . . , and not supported by any medical evidence or reports." AR 16. She concluded that Jordan's assessment was "completely uncorroborated by any objective medical evidence" and "contradicted by [Perez's] own testimony in that she maintains a household for her two daughters and grandson; cooks; attends the Senior citizens' Center three times a week and retains her concentration to play Bingo." AR 26.

---

[3] She excluded Perez's obesity, allergies, and – confusingly – hypertension for the same reason.

At step three, the ALJ found that none of Perez's impairments met the criteria for a presumptively disabling impairment in the Listing of Impairments.

Before turning to steps four and five, the ALJ adopted Dr. Levine's RFC assessment. In so doing, she rejected Perez's description of her symptoms and their severity as "not supported by the substantial medical evidence[.]" AR 24.

At step four, the ALJ adopted the VE's conclusion that Perez could not perform her past work. At step five, she found that Perez could perform other work in the national economy, citing the VE's example of light work that would not conflict with Dr. Levine's non-exertional limitations.

Based on her findings, the ALJ concluded that Perez was not disabled. The Commissioner's Appeals Council reviewed the case in accordance with the settlement in *Padro v. Astrue*, Case No. 11-CV-1788 (E.D.N.Y.), but declined to countermand the ALJ's decision, making it the final decision of the Commissioner.[4] Perez timely sought judicial review.

---

[4] The settlement entitled claimants who had received unfavorable decisions from five ALJs between January 1, 2008, and October 18, 2013, to a new hearing before a different ALJ. For claimants, like Perez, who received an unfavorable decision from one of the specified ALJs between October 18, 2013, and April 18, 2016, the settlement required the decision to be reviewed by a select group of the Appeals Council's staff.

**II**

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).

Perez challenges the ALJ's decision in three respects. First, she argues that the ALJ erred in finding that her mental impairment was not severe. Second, she argues that ALJ erred in finding that Perez had the physical RFC for any light work. Third, she argues that the ALJ failed to properly evaluate her credibility.

**A.  Severity of Mental Impairment**

Under the well-known treating physician rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d

Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)).[5] Perez argues that this rule obliged the ALJ to give controlling weight to Dr. Augustin's assessment of the severity of her mental impairment. The assessment, however, was prepared by Jordan, who is not a psychiatrist or psychologist. Contrary to counsels' representation, the record does not reflect that Dr. Augustin endorsed Jordan's assessment.

Nevertheless, an ALJ is obliged to evaluate every medical opinion "[r]egardless of its source." 20 C.F.R. § 404.1527(c). This applies if the opinion is not from an "acceptable" medical source (such as a physician or psychiatrist), and even if it is not from a medical source at all. *See id.* § 404.1527(f)(1). An ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* § 404.1527(f)(2).

The ALJ gave reasons for giving Jordan's assessment little weight, but those reasons are unpersuasive. Her statement that "dysthymia . . . is not depression," AR 16, is cryptic and incorrect, as evidenced by the current name of the impairment. Her concern for the lack of reports and objective medical evidence is unfounded. As

---

[5] Due to amendments to the regulation, the rule is now embodied in 20 C.F.R. § 404.1527(c)(2).

11

the Court has previously explained, "[m]ental impairments are difficult to diagnose." *Polis v. Astrue*, 2010 WL 2772505, at *10 (E.D.N.Y. July 13, 2010). The patient's self-reported history is "an essential diagnostic tool," *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003), as are the mental health professional's own observations, *see Polis,* 2010 WL 2772505, at *10 (citing *Clester v. Apfel*, 70 F. Supp. 2d 984 (S.D. Iowa 1999) ("Quite frankly, the Court is unaware of what a psychiatrist is expected to do . . . other than to review the patient's history, conduct a mental status examination and to report the results and recommendations regarding the patient's ability to function.")). Her conclusion that Perez's testimony contradicts the assessment grossly misreads that testimony. Perez did not testify that she "maintain[ed] a household." AR 26. To the contrary, she testified that others do the cooking and cleaning, and that she even needs assistance getting dressed. And the fact that she can concentrate on a game of bingo hardly means that she can maintain the same focus in a work environment. *See Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983) ("There was no proof that Carroll engaged in any of these activities [reading, watching television, and taking public transportation] for sustained periods comparable to those required to hold a sedentary job."); *Murdaugh v. Secretary of Health & Human Servs.*, 837 F.2d 99, 102 (2d Cir. 1988) ("[A] claimant need not be an invalid to be found disabled under . . . the Social Security Act.").

The only conclusion to be drawn from Jordan's assessment is that Perez's mental impairment imposed sufficient limitations not to be excluded at step two and to be considered in the constellation of other impairments at the remaining steps. *See Dixon v. Shalala*, 54 F.3d 1019, 1025 (2d Cir. 1995) ("[The three dissenting justices in *Bowen v. Yuckert*, 482 U.S. 467 (1986)] made clear that they agreed with [Justices O'Connor and Stevens] that the only valid severity regulation would be one that screened out only *de minimis* claims."). Since the ALJ reached a contrary conclusion, she did not consider whether it met the criteria for a listed impairment or, if not, what effect it had on Perez's RFC.[6] In addition -- perhaps because Perez first sought mental-health treatment after applying for benefits -- no consultative exam for her mental impairment was ordered. Remand is necessary to fill these gaps in the record. *See Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004) ("[W]here the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate.").

---

[6] "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment [than the step-two determination] by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments[.]" SSR 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996).

**B.    Other Issues**

Although the Court is remanding based on Perez's first claim of error, it briefly addresses her other two claims to possibly obviate the need for a second round of judicial review.

Contrary to Perez's argument, the ALJ was entitled to credit Dr. Levine's RFC assessment over Dr. Varghese's assessment. An RFC assessment is not subject to the treating-physician rule. *See* 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . , the final responsibility for deciding these issues is reserved to the Commissioner."); *id.* § 404.1527(d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner[.]") And while the ALJ was still required to evaluate Dr. Varghese's non-controlling opinion, Dr. Levine's expertise as an orthopedic surgeon was a valid consideration in her decision to give it more weight. *See id.* § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). On the other hand, the ALJ was not free to disregard, without explanation, Dr. Levine's recommendation that Perez continue to use a cane. *See Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004) ("It is not proper for the ALJ to simply pick

and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the plaintiff's claims.").

With regard to Perez's credibility, the Commissioner's two-step procedure for evaluating pain and other symptoms required the ALJ to first ask whether there was "objective medical evidence from an acceptable medical source that shows [Perez had] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). If so, then she was required to evaluate the intensity and persistence of the symptoms "based on all of the available evidence." *Id.* The ALJ's conclusion that Perez's symptoms were "not supported by the substantial medical evidence" was -- at least with respect to Perez's conceded knee pain -- inconsistent with that procedure. *See id.* § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *1 (recognizing that "symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone").

## III

For the foregoing reasons, Perez's motion for judgment on the pleadings is granted, the Commissioner's motion for judgment in the pleadings is denied, and the

case is remanded for further proceedings consistent with this Memorandum and Order.

**SO ORDERED**.

\_\_\_\_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
July 24, 2018